192 P.3d 360 (2008)
STATE of Washington, Respondent,
v.
Jesie Pele PUAPUAGA, Petitioner.
No. 80041-3.
Supreme Court of Washington, En Banc.
September 18, 2008.
*361 Barbara L. Corey, Attorney at Law, Tacoma, WA, for Petitioner.
Kathleen Proctor, Stephen D. Trinen, Pierce County Prosecuting Atty. Office, Tacoma, WA, for Respondent.
C. JOHNSON, J.
¶ 1 This case asks us to determine whether it is proper for the State to seize by ex parte order the personal property of a pretrial detainee who is transferred to Western State Hospital for a competency evaluation. Jesie Pele Puapuaga, who is charged with second degree murder, was transferred to Western State Hospital for a competency evaluation. Upon arrival, Puapuaga's items were inventoried by hospital staff. Among his personal items was what appeared to be state discovery materials evidently not authorized for release to Puapuaga, plus a threatening note directed to one of Puapuaga's codefendants. The State was notified of the materials and obtained ex parte orders seizing the property. The trial court denied Puapuaga's motion for immediate return of the property and for dismissal of the criminal prosecution under Criminal Rule (CrR) 8.3(b), upheld the ex parte orders, and appointed a special master to review the items in camera to protect any privileged materials. We affirm the trial court.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 Jesie Pele Puapuaga is charged in Pierce County with second degree murder. His case was assigned to Judge Tollefson with a trial date of October 15, 2007. The court ordered Puapuaga to undergo a competency evaluation at Western State Hospital.[1] Upon his arrival at the hospital on March 16, 2007, staff inventoried Puapuaga's property and found a box containing what appeared to be unredacted state discovery documents, including autopsy photographs of the victim, and what appeared to be a threatening message directed to one of Puapuaga's codefendants and written on a "kite."[2] The State had not approved release of discovery materials to Puapuaga.
¶ 3 A mental health evaluator e-mailed the deputy prosecutor and defense counsel about these discoveries. Later that day, the deputy prosecutor, upon written motion, obtained from Judge Serko an ex parte order "impounding" Puapuaga's property by Western *362 State.[3] Clerk's Papers (CP) at 5-7. The prosecutor contacted the mental health evaluator and requested a list of the items taken from Puapuaga, which was e-mailed to her on March 22, 2007. The following day, the prosecutor obtained another ex parte order from Judge Serko transferring the property to the Pierce County Prosecuting Attorney's Office. CP at 9-10. Defense counsel was available both days, and the State claims that although Judge Tollefson was in session both days, he was unavailable. Neither ex parte order was obtained in open court and no record was made of the proceedings. The State did not inform defense counsel of either ex parte order.
¶ 4 A search warrant for the kite was also obtained by the Lakewood Police Department, but it is unclear whether it was executed. According to the State, on March 23, 2007, a detective of the Lakewood Police Department went to Western State and served a warrant for the kite and put it into evidence. CP at 39. However, in the detective's affidavit, the detective refers only to the court's order, and there is no evidence of such a search warrant contained in the record.[4] CP at 51. The detective went to Western State, secured the lid of the box containing the items with evidence tape, and stored the box in his office. The detective did not look at the documents. The box has since been transferred to Judge Tollefson's chambers.
¶ 5 Defense counsel objected to these developments, asserting a violation of her client's privacy rights and violation of the attorney-client privilege. Counsel insisted she had provided no discovery materials to her client, suggesting that he might have obtained the materials from someone in the jail. The State alleged that there had been a discovery violation and that there was possible evidence of witness tampering, and moved for appointment of a special master to review the documents and redact any attorney-client communications. Defense counsel first agreed to appointment of a special master but later opposed the procedure and moved for return of the material and for disqualification of the deputy prosecutor or dismissal of the prosecution.
¶ 6 On April 13, 2007, Judge Tollefson entered findings and conclusions on admissibility of the impounded materials and concluded that the State's actions were a reasonable exercise of police power. CP at 76-77. The court granted the State's motion for appointment of a special master and denied Puapuaga's motions, including his motion to dismiss the prosecution and for immediate return of the property. Under the court order, the special master is to review the impounded materials in the presence of defense counsel and determine whether they contain any privileged communications or indications of defense preparation. The special master is then to redact the protected materials and turn the remaining items over to the court. The court will then hold another hearing to determine what items, if any, should be turned over to the State.
¶ 7 The court stayed its decision to permit Puapuaga to move in this court for a stay and for direct discretionary review of the trial court's order appointing a special master. Our commissioner granted a stay pending further order of this court and referred the motion for discretionary review to the court. We continued the stay and granted review.

ISSUE
Whether the trial court properly denied Puapuaga's motion to dismiss his second degree murder charge or for return of the seized items and granted the State's motion for appointment of a special master.

ANALYSIS
¶ 8 Two things must be shown before a court can order dismissal of charges under *363 CrR 8.3(b).[5] First, a defendant must show arbitrary action or governmental misconduct. Second, a defendant must show prejudice affecting the defendant's right to a fair trial. State v. Michielli, 132 Wash.2d 229, 240, 937 P.2d 587 (1997). A trial court's decision to dismiss charges is reviewable under the manifest abuse of discretion standard.

I
¶ 9 Puapuaga claims that the State unlawfully seized and continues to hold his personal property. He claims that by seizing his property through ex parte orders, the State violated his constitutional rights and committed governmental misconduct. These actions, Puapuaga maintains, prejudiced his ability to conduct a timely investigation into his case.[6] Among the constitutional rights violated, Puapuaga asserts violation of the right to privacy under Wash. Const. art. I, § 7 and the U.S. Const. amend. IV.[7] According to Puapuaga, under article I, section 7[8] and the Fourth Amendment,[9] pretrial detainees have a reasonable expectation of privacy in their property that prohibits government search and seizure absent a showing of legitimate reason for breaching such privacy rights.
¶ 10 When presented with arguments under both the state and federal constitutions, we review the state constitution arguments first. State v. Surge, 160 Wash.2d 65, 71, 156 P.3d 208 (2007). We have found that article I, section 7 provides greater protection of a person's right to privacy than the Fourth Amendment. In the context of this case, interpretation and application of article I, section 7 requires a two-part analysis. The first step requires us to determine whether the action complained of constitutes a disturbance of one's private affairs. If there is no private affair being disturbed, the analysis ends and there is no article I, section 7 violation. If, however, a private affair has been disturbed, the second step is to determine whether authority of law justifies the intrusion. Authority of law may be satisfied by a valid warrant. Surge, 160 Wash.2d at 71, 156 P.3d 208.
¶ 11 The private affairs inquiry focuses on those privacy interests that Washington citizens have held and should be entitled to hold safe from governmental trespass absent a warrant. Private affairs are not determined according to a person's subjective expectation of privacy but, in part, are determined by examining the historical treatment of the interest asserted. If history does not show whether the interest is one entitled to protection under article I, section 7, we then ask whether the expectation is one that a citizen of this state is entitled to hold. This part of the inquiry includes a look into the nature and extent of the information that may be obtained as a result of the governmental conduct and the extent to which the *364 information has been voluntarily exposed to the public. Surge, 160 Wash.2d at 72, 156 P.3d 208.
¶ 12 Here, the private affairs inquiry focuses on a pretrial detainee's asserted privacy interest in their personal effects, not on the privacy interest of the ordinary citizen. Puapuaga does not claim that pretrial detainees historically have maintained any specific privacy interest but argues instead that the privacy expectation is one he is entitled to hold. He claims the government could obtain an extensive amount of information for its investigation through the seized items. Also, he submits that he did not voluntarily expose the information but took the materials with him to Western State, affirming his intention to maintain the privacy of his property.
¶ 13 Contrary to Puapuaga's contention, the private affairs inquiry in this case is resolved by reviewing historical treatment of the privacy interest asserted. We have recognized that an inmate's expectation of privacy is necessarily lowered while in custody. State v. Campbell, 103 Wash.2d 1, 23, 691 P.2d 929 (1984) (holding State's search and seizure of work release inmate's car did not violate the U.S. Const. amend. IV or Const. art. I, § 7). In State v. Cheatam, 150 Wash.2d 626, 81 P.3d 830 (2003), we held that an arrestee has no reasonable expectation of privacy in personal items once they have been viewed by state officials during a valid inventory search. In Cheatam, the defendant was arrested for rape, and upon booking in jail had his personal effects, including his shoes, taken from him, inventoried, and stored in the jail's property room. Four days later, a detective obtained the shoes from the property room as evidence of an unrelated rape. Cheatam claimed such retrieval violated U.S. Const. amend. IV and Const. art. I, § 7 prohibitions against warrantless searches and seizures. The trial court denied Cheatam's motion to suppress evidence of the shoes, and we affirmed the denial.
¶ 14 The State cites to Cheatam to argue Puapuaga's privacy rights have not been violated. Puapuaga makes no reference to Cheatam, nor any distinction between inventory and seizure of his personal effects upon transfer to Western State and inventory and seizure of an arrestee's personal effects upon booking. Certainly, the State may lawfully inventory an arrestee's personal effects, whether shoes or a box of documents.[10] As in Cheatam, Puapuaga does not contend the inventory search was unlawful. And like Cheatam, Puapuaga does not provide authority suggesting that pretrial detainees have historically held a protectable privacy interest in property properly inventoried, seized, and held by state officials. Cheatam, 150 Wash.2d at 643, 81 P.3d 830. To the contrary, history shows the interest is one not entitled to protection. Thus, Puapuaga fails the private affairs prong of the article I, section 7 analysis and consequently fails to establish any privacy right under these facts.[11]

*365 II
¶ 15 Next, Puapuaga argues that by obtaining the orders ex parte from a judge not assigned to the case and without making a record, the State violated rules of discovery, which in turn satisfies the governmental misconduct prong of his motion to dismiss. Puapuaga contends that the rules the State violated are Pierce County Local Rule 40(b) (case assignment), RCW 2.08.030 (superior courts are courts of record), and criminal motion notice requirements.[12] As with his privacy claim, Puapuaga maintains that the deprivation of his items prejudiced him in his ability to prepare for trial.
¶ 16 While we do not necessarily condone the State's action of proceeding ex parte, we agree with the superior court that this procedure is not a basis to dismiss an underlying charge. Further, we find that the trial court, by permitting Puapuaga to challenge the State's action in a hearing and by appointing a special master to review the contents of the box, acted well within its authority to regulate discovery.[13]
¶ 17 At most, if any of the contents of the box are attorney-client privileged communications, which the State intended to introduce in the murder trial proceedings, Puapuaga could then bring a motion raising a more specific objection. But, unlike the defendant in Cheatam, Puapuaga has not filed a motion to suppress the seized items from being used in his criminal trial. Instead, he has moved for dismissal of his murder charge or immediate return of his property. While the shoes seized in Cheatam were used as evidence of Cheatam's guilt, here, the contents of the box appear at this stage of the proceedings to be unrelated to Puapuaga's second degree murder charge or any charge at all. We emphasize that we are unable to establish a nexus between the disputed property and Puapuaga's murder charge. Therefore, we leave to the trial court, who currently possesses the box, the task of determining whether to give the items to the State or return the items to Puapuaga or his counsel. Any requests for return of the box should be addressed to the trial court and may be resolved in the hearings already pending.
¶ 18 We hold that dismissal of Puapuaga's murder charge is an extraordinary remedy not fitting for these circumstances and that in the absence of the box as part of the record on review, we will not order return of the items to Puapuaga. We affirm the trial court's order appointing a special master and its order denying Puapuaga's request for return of his items and for dismissal of his second degree murder charge under CrR 8.3(b). We remand the case to the trial court.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice SUSAN OWENS, Justice MARY E. FAIRHURST, Justice BARBARA A. MADSEN, Justice JAMES M. JOHNSON, Justice DEBRA L. STEPHENS, and Justice TOM CHAMBERS.
SANDERS, J. (concurring).
¶ 19 I agree with the majority that dismissal of the second degree murder charge against Jesie Pele Puapuaga under Criminal Rule (CrR) 8.3(b) is unwarranted. We have no idea what is contained inside the seized *366 box owned by Puapuaga, so we cannot hold that he was so prejudiced by the seizure that it materially affected his right to a fair trial. Nevertheless, warrantless seizure of lawful private property through ex parte orders violates state and local discovery rules and is unconstitutional governmental misconduct under CrR 8.3(b). I would hold that both ex parte orders should be dismissed and Puapuaga's private property items in the seized box should be returned absent a search warrant. Therefore, I concur.
¶ 20 Briefly summarizing the facts, Puapuaga was charged with second degree murder and the defense moved for a competency evaluation to be performed at Western State Hospital. Hospital staff performed an inventory search of Puapuaga's possessions that included a box. Inside the box, the hospital staff found papers that allegedly included autopsy photos and a threatening letter addressed to a testifying codefendant. The State and defense counsel were notified about the contents of the box. Later, a deputy prosecutor obtained two ex parte orders from Judge Susan Serko, who was not assigned to Puapuaga's case, authorizing police to impound the box materials and also to seize them. The State sought these ex parte orders while the assignment judge and defense counsel were available.
¶ 21 For a court to dismiss charges under CrR 8.3(b), the defendant must show (1) arbitrary action or governmental misconduct and (2) prejudice materially affecting the defendant's right to a fair trial. State v. Michielli, 132 Wash.2d 229, 239-40, 937 P.2d 587 (1997). A warrantless search or seizure is presumed unconstitutional unless an exception applies. State v. Gatewood, 163 Wash.2d 534, 539, 182 P.3d 426 (2008); U.S. Const. amend. IV; Const. art. I, § 7.
¶ 22 The majority cites State v. Cheatam, 150 Wash.2d 626, 642, 81 P.3d 830 (2003), to justify the ex parte orders contending that an arrestee such as Puapuaga had no reasonable expectation of privacy in personal items under the state and federal constitutions once they have been viewed by state officials during a valid inventory search. Majority at 363-64. The majority fails to mention that in Cheatam, the defendant was arrested and at the time of his arrest had his personal effects taken from him, inventoried, and stored in the jail's property room. Cheatam, 150 Wash.2d at 642, 81 P.3d 830. Here, unlike Cheatam, Puapuaga was a patient at Western State Hospital when the box was seized by hospital officials, not a jail or prison inmate, and none of the disputed personal effects in his box were seized pursuant to his arrest. Thus, the majority's claim that Puapuaga had no expectation of privacy in his personal effects at the hospital due to an inventory search is false.
¶ 23 The ex parte orders crafted by the prosecution were a blatant violation of court discovery rules and the state and federal constitutional rights of Puapuaga to open administration of justice and to be present at all hearings in his case. See RCW 2.08.030 (superior courts are courts of record); Pierce County Local Rule 40(b) (case assignment); CrR 8.2; Civil Rule (CR) 7(b); CR 6(d); U.S. Const. amend. VI; Const. art. I, § 22; Const. art. I, § 10. The majority rubber stamps the two ex parte orders on the basis that the contents of the seized box do not appear to be related to Puapuaga's second degree murder charge. Majority at 365. Yet, the majority concedes that the box allegedly contained "what appeared to be unredacted state discovery documents, including autopsy photographs of the victim, and what appeared to be a threatening message directed to one of Puapuaga's codefendants and written on a `kite.'" Id. at 362.
¶ 24 If this is true, these documents have a strong connection to Puapuaga's second degree murder trial as privileged attorney-client materials. The majority's upholding of the trial court's appointment of a special master to review the seized box materials encourages future violations of individual procedural constitutional rights. The State cites no authority authorizing it to use ex parte orders to seize a defendant's personal effects from a mental health facility while the defendant is temporarily confined there. The state and federal constitutions do not allow governments to engage in shadow justice. Neither ex parte order was obtained in open court, no record was made of the proceedings, and the State did not inform *367 defense counsel of either order. The government must instead obtain a valid search warrant based on probable cause and execute a search and seizure of Puapuaga's private property pursuant to that warrant.
¶ 25 Here, we cannot dismiss Puapuaga's second degree murder charge because material prejudice cannot be established without knowing the contents of the seized box. However, the government misconduct prong in this case under CrR 8.3(b) is established due to the unconstitutional and unjustified ex parte orders that violated state and local discovery rules. Thus, I would hold both ex parte orders should be dismissed and Puapuaga's noncontraband private property items in the seized box should be returned absent a search warrant.
¶ 26 I concur.
NOTES
[1] Western State Hospital is a state hospital designated by RCW 72.23.020.
[2] A "kite" is a form used in prison for communication from inmates to prison staff. In limited circumstances, a kite may be used for correspondence between inmates after the message is first approved by prison administration. Report of Proceedings at 9-10 (Apr. 10, 2007).
[3] Nowhere did the trial court define "impound." For purposes of our analysis, we equate impound with seizure of propertymeaningful interference with an individual's possessory interest in that property. United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).
[4] Because it is unclear in the record whether the search warrant for the kite was executed, our analysis is limited to the propriety of the ex parte orders.
[5] CrR 8.3(b) reads: "The court, in furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order."
[6] Puapuaga's materials were first seized on March 16, 2007. CP at 7. The trial court ordered appointment of a special master on April 13, 2007, CP at 82, and Puapuaga's counsel filed a notice for discretionary review to this court the same day, CP at 79. Had Puapuaga not contested appointment of the special master, he would have been without his materials for approximately one month.
[7] In addition to arguing violation of his right to privacy, Puapuaga asserts violation of the following rights: the right to confrontation under U.S. Const. amend. VI; the right of a criminal defendant to be present at critical stages of the proceedings under Wash. Const. art. I, § 22; the right to effective assistance of counsel; and the right to have a speedy public trial under Wash. Const. art. I, § 22 and U.S. Const. amend. VI. Puapuaga has not adequately briefed or argued these claims. Therefore, we decline to address them.
[8] Wash. Const. art. I, § 7 reads: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."
[9] U.S. Const. amend. IV reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[10] The trial court recognized as a disputed fact whether Puapuaga's materials contained any attorney-client privileged communications or any work product in preparation of the defense. CP at 75. As special protection, the court appointed a special master to review the contents of the box in the presence of Puapuaga's counsel. CP at 81-82. It is questionable whether article I, section 7 and the Fourth Amendment are the proper authorities for protection of potentially privileged materials. Cf. State v. Garza, 99 Wash.App. 291, 994 P.2d 868 (2000) (holding jail officers' inspection of pretrial detainees' personal property, which included legal documents containing private communications with attorneys, violated the detainees' right to counsel protected by U.S. Const. amend. VI and Wash. Const. art. I, § 22).
[11] Puapuaga fails to identify the greater protection provided by article I, section 7, in these circumstances. And to support his privacy claim, Puapuaga cites only to Fourth Amendment jurisprudenceBlock v. Rutherford, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984) and Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), cases upholding policies surrounding "shakedown" searches of inmate cells. Puapuaga is incorrect in his claim that Wolfish and Block stand for the rule that pretrial detainees have a reasonable expectation of privacy in their property. Only Wolfish mentioned pretrial detainees' privacy interests, describing them as "diminished." Though often interpreted to mean that a pretrial detainee has a greater privacy expectation than a prisoner, the Wolfish decision merely stated that even if a pretrial detainee retained an expectation of privacy, it would necessarily be of diminished scope: "Assuming, arguendo, that a pretrial detainee retains such a diminished expectation of privacy after commitment to a custodial facility, we nonetheless find that the room-search rule does not violate the Fourth Amendment." Wolfish, 441 U.S. at 557, 99 S.Ct. 1861; cf. Hudson v. Palmer, 468 U.S. 517, 530, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells).
[12] CrR 8.2 refers to Civil Rule (CR) 7(b) as governing criminal motions. The timing of written motions is set out in CR 6(d), which states in relevant part, "[a] written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court. Such an order may for cause shown be made on ex parte application." (Emphasis added.)
[13] Had the sealed box of Puapuaga's materials been transferred to this court's possession for consideration, as was the State's intent indicated in its supplemental designation of clerk's papers, we would be able to determine whether Puapuaga has actually been prejudiced by the temporary deprivation of his items and whether dismissal of the prosecution or return of the items would be appropriate remedies.