[No. 40181-9-II.  Division Two.  May 3, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. JENNIFER JOY HATHAWAY, *Appellant*.

636

*Jordan B. McCabe*, for appellant.

*Juelanne B. Dalzell, Prosecuting Attorney*, and *Thomas A. Brotherton* and *Scott W. Rosekrans, Deputies,* for respondent.

¶1 QUINN-BRINTNALL, J. — A jury found Jennifer Joy Hathaway guilty of unlawful possession of a controlled substance (methamphetamine), in violation of RCW 69.50.4013. Hathaway appeals, arguing that a law enforcement officer's review of her driver's licensing records violated her privacy rights protected by article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution. She also challenges (1) sufficiency of the evidence, (2) the trial court's refusal to give a requested "mere proximity" jury instruction, (3) the elements included in the "to-convict" jury instruction, and (4) a $1,604.53 "jury demand fee" imposed at sentencing. Because Hathaway's privacy rights were not violated, sufficient evidence supports the jury's verdict, and the jury instructions were proper, we affirm Hathaway's conviction. But we agree with Hathaway that the trial court exceeded its statutory authority when it imposed a $1,604.53 jury demand fee. Accordingly, we affirm the conviction, but we remand to the trial court to correct Hathaway's judgment and sentence by reducing the jury demand fee to that allowed by statute.

## FACTS

¶2 On July 16, 2008, Hathaway visited an inmate at the Jefferson County Jail. Because the jail was short staffed that day, Jefferson County Sheriff's Deputy Brian Anderson helped screen visitors. Specifically, Anderson ran a computer check of visitor names looking for outstanding warrants per the jail's standard visitor screening procedures; this standard check also provides driver licensing information. When Anderson learned that Hathaway's driving privileges were suspended, he asked jail staff to advise him if she left by driving a vehicle.

¶3 While sitting in his patrol car, Deputy Anderson learned from jail staff that Hathaway had entered a car. Anderson spotted the car, noted only a driver occupied it, and followed the car out of the jail parking lot. Anderson

activated his patrol lights and siren to perform a traffic stop. Despite opportunities to pull over, Hathaway made three turns and then pulled over "[l]ess than a mile" from where Anderson had turned on his patrol lights. 1 Report of Proceedings (RP) at 40.

¶4 Deputy Anderson approached the vehicle and when he asked Hathaway for her driver's license, she said she did not have it with her. Anderson confirmed with his dispatch that Hathaway's driver's license had been suspended and he arrested her. He handcuffed her and walked her to his patrol car, where he performed a search of her person incident to arrest. While Anderson searched Hathaway's legs, he heard a "tink" like "something hitting the ground." 1 RP at 43. He looked over and saw a small clear plastic vial containing a white crystalline substance about six inches from Hathaway's foot. At trial, Anderson testified that the vial was underneath and behind his patrol car's rear wheel such that he would have run over it if it had been there before the stop. Anderson put Hathaway in his patrol car and read her *Miranda*[1] rights. When he asked her about the vial, Hathaway replied, "I don't know, it's not mine." Clerk's Papers (CP) at 24. A forensics lab later confirmed that the vial contained 0.47 grams of methamphetamine.

¶5 The State charged Hathaway with unlawful possession of a controlled substance (methamphetamine), under RCW 69.50.4013(1), and third degree driving with a suspended license, under former RCW 46.20.342(1)(c) (2004).[2] At the end of the first day of trial, the parties began discussing jury instructions. Hathaway objected to the State's proposed to-convict instruction because it omitted the element of "unlawfully" possessing the controlled substance.[3] She proposed adding the element "[t]hat the defendant's possession was unlawful." CP at 35. The parties

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] At the beginning of Hathaway's jury trial, the trial court granted the State's motion to dismiss the driving with a suspended license charge.

[3] The State's proposed jury instructions are not included in the record on appeal. At trial, the State indicated it proposed the to-convict jury instruction

agreed that they would meet and discuss their jury instruction dispute.

¶6 The next day, the trial court acknowledged that the parties had agreed to include unlawful possession as an element in the to-convict jury instruction. But Hathaway said that further research after the parties met revealed that possession did *not* have to include "unlawful" as an element. When the trial court asked Hathaway if she had any exceptions to the use of a to-convict jury instruction that included unlawful possession as an element, Hathaway responded, "I don't have any exceptions to what you proposed." 2 RP at 81. The trial court also denied Hathaway's request to instruct the jury that "[m]ere proximity alone is not enough to establish constructive possession." CP at 37.

¶7 A jury found Hathaway guilty of unlawful possession of a controlled substance. The trial court sentenced Hathaway to 3 months confinement and/or work release and 12 months community custody. The trial court also imposed $3,967.35 in legal financial obligations, which included a $1,604.53 "[j]ury demand fee" that Hathaway stated she felt was excessive. CP at 56. Hathaway timely appeals.

## ANALYSIS

### PRIVACY RIGHTS IN DRIVER'S LICENSING RECORDS

¶8 Hathaway challenges Deputy Anderson's investigation of her driver's licensing records, arguing that it was a

---

"straight from [11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 50.02 (3d ed. 2008) (WPIC)]." 1 RP at 74.

11 WPIC 50.02, at 946, states in relevant part,

> To convict the defendant of the crime of possession of a controlled substance, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about (date), the defendant possessed [a controlled substance] [(fill in controlled substance)]; and
> (2) That this act occurred in the State of Washington.

(Alterations in original.)

warrantless search that violated her privacy rights under article I, section 7 of the Washington State Constitution and the Fourth Amendment to the United States Constitution. Specifically, she argues that accessing her driver's licensing information, without her consent or probable cause, is an intrusion on her privacy rights that is not reasonably related to ensuring the safe operation of a jail. Hathaway asks us to hold that her arrest was unlawful and reverse her conviction. We discern no error.

¶9 When presented with challenges under both the state and federal constitutions, we review state constitutional challenges first. *State v. Puapuaga*, 164 Wn.2d 515, 521, 192 P.3d 360 (2008). It is well established that article I, section 7 of the Washington Constitution qualitatively differs from, and in some areas provides greater protections than, the Fourth Amendment. *Puapuaga*, 164 Wn.2d at 521-22; *State v. McKinney*, 148 Wn.2d 20, 26, 60 P.3d 46 (2002). Accordingly, a *Gunwall*[4] analysis is unnecessary to establish that we should undertake an independent state constitutional analysis. *State v. Jackson*, 150 Wn.2d 251, 259, 76 P.3d 217 (2003); *McKinney*, 148 Wn.2d at 26. The relevant question is whether article I, section 7 affords enhanced protection in this particular context. *McKinney*, 148 Wn.2d at 26.

¶10 Interpreting and applying article I, section 7 requires a two-part analysis. *Puapuaga*, 164 Wn.2d at 522. The first step requires determining whether the State " 'unreasonably intruded into a person's private affairs.' " *State v. Cheatam*, 150 Wn.2d 626, 641-42, 81 P.3d 830 (2003) (internal quotation marks omitted) (quoting *State v. Boland*, 115 Wn.2d 571, 577, 800 P.2d 1112 (1990)); *see also Puapuaga*, 164 Wn.2d at 522. Private affairs are those that reveal intimate or discrete details of a person's life. *State v. Jorden*, 160 Wn.2d 121, 126, 156 P.3d 893 (2007). Private affairs are determined, in part, by examining the historical

---

[4] *State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986) (setting forth the factors for evaluating whether an issue merits independent state constitutional interpretation).

treatment of the interest asserted and are not based on a person's subjective expectation of privacy. *Puapuaga*, 164 Wn.2d at 522. If an historical analysis does not show an interest is protected under article I, section 7, we consider whether the expectation of privacy is one that a citizen of this state is entitled to hold. *Puapuaga*, 164 Wn.2d at 522. This part of the analysis includes a review of (1) the nature and extent of the information that may be obtained as a result of the governmental conduct and (2) the extent that the information has been voluntarily exposed to the public. *Puapuaga*, 164 Wn.2d at 522. If a person's private affairs are not disturbed, our analysis ends and there is no article I, section 7 violation. *Puapuaga*, 164 Wn.2d at 522.

■ ¶11 Here, the private affairs inquiry focuses on a jail visitor's asserted privacy interest in her driver's licensing information contained in a state government database that a law enforcement officer accessed. Our Supreme Court has definitively held that citizens of this state have no protected privacy interest under article I, section 7 of our state constitution in their Department of Licensing (DOL) driver's records. *McKinney*, 148 Wn.2d at 32. As our Supreme Court explained,

> DOL records are kept by a government agency for use by that agency and law enforcement. Considering the purpose for which these records are created, citizens of this state are not entitled to expect that their information is private and protected from disclosure for law enforcement purposes.
>
> Based on the historical treatment of driver's license records, the fact that these records reveal little about a person's associations, financial dealings, or movements, and the purpose for which the State compiles and maintains these records, we hold that there is no protected privacy interest in the information contained in a DOL driver's record under article I, section 7 of our state constitution.

*McKinney*, 148 Wn.2d at 32. *McKinney* controls and Hathaway's private affairs were not intruded on by Deputy Anderson's review of her driver's licensing records. Because Hathaway's private affairs were not intruded on, our article

I, section 7 analysis ends and Hathaway's constitutional privacy rights were not violated. *Puapuaga*, 164 Wn.2d at 522.

¶12 An analysis of Hathaway's argument under the Fourth Amendment fails for similar reasons. Division One of the Court of Appeals squarely addressed Hathaway's Fourth Amendment argument when it considered *State v. Martin*, 106 Wn. App. 850, 25 P.3d 488 (2001), *aff'd sub nom. McKinney*, 148 Wn.2d 20 (2002).[5] Under federal law, " '[t]he essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by . . . law enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions.' " *Martin*, 106 Wn. App. at 861 (second alteration in original) (internal quotation marks omitted) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653-54, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)). " 'Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' " *Martin*, 106 Wn. App. at 861 (quoting *Prouse*, 440 U.S. at 654). Division One held that the minimal intrusion of a police officer's random check of licensing records, which did not include a detention or restraint, did not infringe on an individual's Fourth Amendment rights. *Martin*, 106 Wn. App. at 861. We agree with this analysis and hold that Hathaway's Fourth Amendment argument similarly fails.

¶13 Accordingly, Hathaway's arguments that Deputy Anderson's search of her licensing records violated her article I, section 7 and Fourth Amendment privacy rights fail. Anderson's search of Hathaway's licensing information when she visited the jail did not invalidate her arrest and

---

[5] Our Supreme Court addressed only article I, section 7 in its review of *Martin*. *McKinney*, 148 Wn.2d at 23-24.

does not require suppression of the evidence found during the search incident to her arrest.[6]

SUFFICIENCY OF THE EVIDENCE

¶14 Hathaway next argues that the State failed to prove beyond a reasonable doubt that she constructively possessed methamphetamine. The State responds that it proved Hathaway's actual possession of methamphetamine. We agree with the State.

¶15 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the jury's verdict, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from that evidence. *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). The trier of fact is the sole and exclusive judge of the evidence. *State v. Bencivenga*, 137 Wn.2d 703, 709, 974 P.2d 832 (1999). We defer to the trier of fact's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness of evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

¶16 To prove unlawful possession of a controlled substance, the State must prove only "the nature of the substance and the fact of possession." *State v. Bradshaw*,

---

[6] Hathaway also claims that her counsel was ineffective for failing to file a motion to suppress the evidence found in the search incident to her arrest that stemmed from the warrantless search of her driver's licensing records. To establish ineffective assistance of counsel, Hathaway must show that (1) her counsel's performance was deficient *and* (2) the deficient performance prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Because Deputy Anderson's accessing of Hathaway's driver's licensing records did not violate her constitutional rights, it could not have formed the basis of a successful motion to suppress. Hathaway's ineffective assistance of counsel claim fails.

152 Wn.2d 528, 538, 98 P.3d 1190 (2004) (referring to the unlawful possession statute as the "mere possession" statute), *cert denied*, 544 U.S. 922 (2005); *see* RCW 69.50.4013. Possession can be actual or constructive. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994); *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010), *review denied*, 171 Wn.2d 1006 (2011). Actual possession occurs when a defendant has physical custody of the item, and constructive possession occurs if the defendant has dominion and control over the item. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002).

¶17 Here, the evidence established Hathaway's actual possession of the methamphetamine.[7] Deputy Anderson testified that while he frisked Hathaway, he heard a "tink" sound and then noticed a vial of methamphetamine on the ground inches away from her foot. Anderson also testified that the vial was in a position near his patrol car's tires and that he would have driven over the vial if it had been on the ground before the traffic stop. Based on this testimony, the jury could reasonably infer that when Anderson was not watching Hathaway during the frisk, she removed the vial of methamphetamine from somewhere on her person and dropped it. Sufficient evidence supports Hathaway's unlawful possession of a controlled substance conviction.

Jury Instruction: "Mere Proximity" Instruction

¶18 Next, Hathaway argues that the trial court prevented her from arguing her theory of the case—that she did not constructively possess the methamphetamine—by failing to give her proposed jury instruction that "[m]ere proximity alone is not enough to establish constructive possession." CP at 37. We hold that the trial court did not abuse its discretion when denying Hathaway's proposed instruction.

---

[7] Hathaway inaccurately states that "the State did not allege actual possession [and] the court instructed the jury on constructive possession." Br. of Appellant at 12. The trial court's jury instructions included the law on both actual possession *and* constructive possession.

¶19 In general, we review a trial court's choice of jury instructions for an abuse of discretion. *State v. Douglas*, 128 Wn. App. 555, 561, 116 P.3d 1012 (2005).[8] Jury instructions are sufficient if substantial evidence supports them, they allow the parties to argue their theories of the case, and, when read as a whole, they properly inform the jury of the applicable law. *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002). It is reversible error to refuse to give a proposed instruction only if the instruction properly states the law and the evidence supports it. *State v. Ager*, 128 Wn.2d 85, 93, 904 P.2d 715 (1995); *see Staley*, 123 Wn.2d at 803. But it is not error for a trial court to refuse a specific instruction when a more general instruction adequately explains the law and allows each party to argue its case theory. *State v. Portrey*, 102 Wn. App. 898, 902, 10 P.3d 481 (2000); *State v. Castle*, 86 Wn. App. 48, 62, 935 P.2d 656, *review denied*, 133 Wn.2d 1014 (1997).

¶20 Hathaway correctly asserts that under Washington law, mere proximity, without more, is insufficient to establish constructive possession. *See State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969); *Portrey*, 102 Wn. App. at 902-03. But decisions from both Division One and Division Three of the Court of Appeals have rejected the necessity of a mere proximity instruction under facts similar to Hathaway's. In *Castle*, police discovered paraphernalia with cocaine residue in a bag behind the driver's seat of Castle's car after a traffic stop. 86 Wn. App. at 50. Castle told the police that the bag of drug paraphernalia was not his, that his car had been stolen about a month earlier, and that he had just recovered his car. *Castle*, 86 Wn. App. at 51. Castle proposed a mere proximity jury instruction, and Division One upheld the trial court's decision rejecting the proposed language and instructing the jury using 11

---

[8] Hathaway asserts that the proper standard of review is de novo. She believes the trial court committed an error of law by failing to give the requested mere proximity instruction. But even if this were a constructive possession case, which it is not, 11 WPIC 50.03, at 949, in the form the trial court gave in this case, is a "complete and accurate" statement of the law of constructive possession. *State v. Castle*, 86 Wn. App. 48, 61, 935 P.2d 656, *review denied*, 133 Wn.2d 1014 (1997).

*Washington Practice: Washington Pattern Jury Instructions: Criminal* 50.03, at 949 (3d ed. 2008) (WPIC). *Castle*, 86 Wn. App. at 60-62. Division One held that the standard WPIC instruction was a complete statement of the law that allowed a defendant to argue that he/she did not have constructive possession of the drugs. *Castle*, 86 Wn. App. at 61; *see also State v. Huff*, 64 Wn. App. 641, 655, 826 P.2d 698 (trial court's refusal to give "mere proximity" instruction did not prevent defendant from arguing that more than proximity was needed to establish constructive possession), *review denied*, 119 Wn.2d 1007 (1992). Division Three relied on *Castle* when it rejected a similar argument in the context of marijuana plants found next to a defendant on land near the defendant's home. *Portrey*, 102 Wn. App. at 901. As in *Castle*, the *Portrey* court reasoned that the more general instruction on possession did not deprive a defendant of his/her ability to argue that proximity to contraband is inadequate to prove constructive possession. *Portrey*, 102 Wn. App. at 903; *Castle*, 86 Wn. App. at 61.

¶21 Here, as in *Portrey* and *Castle*, the trial court gave the jury a complete and accurate statement of the law concerning possession that did not deprive Hathaway of the ability to present her theory of the case. And Hathaway actually argued to the jury that the only evidence of her guilt was her proximity to the methamphetamine because Deputy Anderson did not see where the vial came from. The trial court's legally correct general jury instruction on possession allowed both sides an opportunity to present their theories of the case.

¶22 Moreover, the State did not rely only on Hathaway's proximity to the contraband when presenting its case. Deputy Anderson testified he heard a "tink," like "something hitting the ground," before he saw the vial of methamphetamine on the ground. 1 RP at 43. Anderson also testified about the location of the vial on the ground near his patrol car's wheels and how he would have driven over the vial if it had been there before the traffic stop. Here, the State did not rely on mere proximity and there was no

likelihood that the jury would do so either. *Castle*, 86 Wn. App. at 62; *see also Portrey*, 102 Wn. App. at 903 (concluding there was no error in refusing to give a proximity instruction when "the State's case did not rest solely on the defendant's proximity").

## To-Convict Jury Instruction Elements

¶23 Hathaway argues that the to-convict jury instruction contained an extraneous element that became the law of the case. Specifically, she argues that the jury instruction required the State to prove that she *unlawfully* possessed a controlled substance beyond simply proving that she possessed it. We discern no error.

■■ ¶24 We review an alleged error of law in jury instructions de novo. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005). In Washington, "unlawful possession of a controlled substance" requires the State to prove only "the nature of the substance and the fact of possession." *Bradshaw*, 152 Wn.2d at 538 (referring throughout the opinion to the "unlawful possession" statute as the "mere possession" statute). But defendants can assert an affirmative defense of unwitting or lawful possession. *Bradshaw*, 152 Wn.2d at 538; *Staley*, 123 Wn.2d at 799. This affirmative defense " 'ameliorates the harshness of the almost strict criminal liability our law imposes for unauthorized possession of a controlled substance.' " *Bradshaw*, 152 Wn.2d at 533 (quoting *State v. Cleppe*, 96 Wn.2d 373, 381, 635 P.2d 435 (1981), *cert. denied*, 456 U.S. 1006 (1982)).

¶25 Here, the trial court instructed the jury that

[t]o convict the defendant of the crime of possession of a controlled substance, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 16th day of July, 2008, the defendant *unlawfully* possessed a controlled substance; and

(2) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 49 (emphasis added).

¶26 Hathaway's argument concerns the inclusion of "unlawfully" in this jury instruction. In the context of a methamphetamine possession case, "unlawfully" is a redundant term that does not add an element to the crime that the State had to prove. Although some controlled substances in Washington can be legally possessed and are subject to an affirmative defense of lawful possession, for example under certain conditions marijuana may be legally possessed for medicinal purposes under ch. 69.51A RCW, there are no circumstances under which a private citizen can lawfully possess methamphetamine.[9] Accordingly, if a jury is convinced beyond a reasonable doubt that a private citizen possessed methamphetamine, the jury implicitly decided as a matter of law that the defendant unlawfully possessed a controlled substance. Any error in the jury instruction was harmless because we are convinced beyond a reasonable doubt that it did not impact the jury's verdict.[10]

¶27 Hathaway's related argument that insufficient evidence supports her *unlawful* possession of methamphetamine also fails. The State alleged and presented sufficient evidence that Hathaway possessed a controlled substance, methamphetamine. Moreover, Hathaway did not raise an affirmative defense of lawful possession. Instead, she as-

---

[9] Methamphetamine is a schedule II drug. RCW 69.50.206(d)(2). Although RCW 69.50.308 allows for the prescribing and dispensing of schedule II drugs, this authority is limited to "medical treatment or authorized research" uses. RCW 69.50.308(a), (b)(1), (g).

[10] Hathaway's brief states that "the Information and the to-convict instruction" include the same extraneous unlawful element. Br. of Appellant at 15. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).

serted only that the contraband was not hers. Accordingly, even if we reviewed Hathaway's sufficiency challenge to the unlawfulness of her possession, sufficient evidence supports the jury's verdict that she unlawfully possessed methamphetamine. We affirm Hathaway's conviction.

JURY DEMAND FEE

¶28 Hathaway contends that a "jury demand fee" of $1,604.53 exceeds the allowed statutory maximum. The State responds that court costs are not a final judgment appealable as a matter of right and, in the alternative, that statutes authorize the amount imposed. We remand for correction of the facially invalid jury demand fee imposed in Hathaway's judgment and sentence.

¶29 The State raises valid points about whether a challenge to the legal financial obligation (LFO) jury demand fee is properly before us. Division One of this court addressed a related question in *State v. Smits*, 152 Wn. App. 514, 216 P.3d 1097 (2009). Smits sought review of a trial court's decision denying his RCW 10.01.160(4) motion to terminate his LFOs. *Smits*, 152 Wn. App. at 518-19. The *Smits* court held that the trial court's decision could not be appealed as a matter of right but might be eligible for discretionary review because it was not a final judgment "because the order to pay LFOs as part of the judgment and sentence is conditional, and RCW 10.01.160(4) allows a defendant to file a petition to modify or waive LFOs 'at any time.' " 152 Wn. App. at 523. The court also suggested that Smits's appeal was not ripe, and barred by RAP 3.1, because the government had not yet sought payment of the LFOs and, thus, Smits was not yet " 'aggrieved in a legal sense.' " *Smits*, 152 Wn. App. at 525 (quoting *State v. Mahone*, 98 Wn. App. 342, 347-48, 989 P.2d 583 (1999)).

¶30 Here, there is no evidence that the State has sought to enforce Hathaway's LFOs, which include the challenged jury demand fee, and, based on *Smits*, her challenge is not properly before this court in this appeal as a matter of right. But RAP 1.2(c) permits us to waive or

alter the rules of appellate procedure "in order to serve the ends of justice." Because review of this purely legal question at this time will facilitate justice and likely conserve future judicial resources, we consider the merits of Hathaway's argument.

¶31 Hathaway argues that the plain language of the court-fee-imposing statutes establishes a maximum jury fee that a sentencing court can impose. We review statutory construction de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). If the statute's plain language and ordinary meaning is clear, we look only to the statute's language to determine intent. *Wentz*, 149 Wn.2d at 346. We read provisions of a statute together to determine the legislative intent underlying the entire statutory scheme to achieve a harmonious and unified statutory scheme. *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282, *cert. denied*, 531 U.S. 984 (2000).

¶32 RCW 10.01.160(1) permits the trial court to impose costs on a convicted defendant.[11] Former RCW 10.01.160(2) (2008), in part, allows the trial court to impose jury fees under RCW 10.46.190.[12] RCW 10.46.190 allows a superior court to impose jury fees on convicted defendants using the same rules covering civil jury fees.[13] RCW

---

[11] RCW 10.01.160(1) states,

The court may require a defendant to pay costs. Costs may be imposed only upon a convicted defendant, except for costs imposed upon a defendant's entry into a deferred prosecution program, costs imposed upon a defendant for pretrial supervision, or costs imposed upon a defendant for preparing and serving a warrant for failure to appear.

[12] Former RCW 10.01.160(2) states in relevant part,

Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision. . . . Expenses incurred for serving of warrants for failure to appear *and jury fees under RCW 10.46.190 may be included in costs the court may require a defendant to pay.*

(Emphasis added.)

[13] RCW 10.46.190 states,

Every person convicted of a crime or held to bail to keep the peace shall be liable to all the costs of the proceedings against him or her, including, when

36.18.016(3)(b) provides that "[u]pon conviction in criminal cases a jury demand charge of one hundred twenty-five dollars for a jury of six, or two hundred fifty dollars for a jury of twelve may be imposed as costs under RCW 10.46.190."

¶33 The plain language of the statutory scheme expressly allows a superior court to impose a jury demand fee in criminal cases on a defendant after his or her conviction. RCW 10.01.160(1); former RCW 10.01.160(2); RCW 10.46.190. And the jury demand fee cannot exceed $125.00 for a 6-person jury or $250.00 for a 12-person jury. RCW 36.18.016(3)(b). Here, the trial court imposed a $1,604.53 jury demand fee in Hathaway's judgment and sentence. The trial court erred when it imposed a jury demand fee in excess of its statutory authority specified in RCW 36.18.016(3)(b). Accordingly, we remand to the trial court to impose fees based on the jury's size consistent with its statutory authority.[14]

¶34 We affirm Hathaway's conviction but remand to the trial court for a correction to the judgment and sentence in accordance with this opinion.

WORSWICK, A.C.J., and VAN DEREN, J., concur.

Review denied at 172 Wn.2d 1021 (2011).

---

tried by a jury in the superior court or before a committing magistrate, a jury fee as provided for in civil actions for which judgment shall be rendered and collected. The jury fee, when collected for a case tried by the superior court, shall be paid to the clerk and applied as the jury fee in civil cases is applied.

[14] The size of the jury is not clear in the record, but a criminal defendant in superior court has a right to 12 jurors unless he or she waives this right. WASH. CONST. art I, § 21; *see* CrR 6.1(b); *State v. Lane*, 40 Wn.2d 734, 736-37, 246 P.2d 474 (1952).