# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58424-7-II |
| Respondent, | |
| v. | |
| KEN LU, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Ken Lu appeals his convictions for unlawful manufacture of a controlled substance within 1,000 feet of a school bus route stop and unlawful possession of a controlled substance with intent to deliver within 1,000 feet of a school bus route stop. He argues that the trial court erred in refusing to give his proposed jury instruction that involved the jury engaging in a "race-switching" exercise to guard against implicit bias. Finding no error, we affirm Lu's convictions.

## FACTS

### I. BACKGROUND

In late 2017, based on an anonymous tip, the Thurston County Narcotics Task Force began an investigation into a possible marijuana growing operation. The task force conducted surveillance of four residences connected with five individuals, Trang My Le, Mathew Tran, Ken Lu, Trung Dang, and David Le, who were all Vietnamese. The task force installed GPS trackers on several of the vehicles owned by the individuals being investigated, and it obtained video

surveillance by installing cameras. While one of those cameras was being installed, a member of the task force, Christopher Packard, smelled marijuana and heard a humming sound coming from an outbuilding on one of the properties. Packard also smelled marijuana and heard a humming noise coming from an outbuilding on one of the other properties under surveillance.

In March 2018, the task force executed search warrants at each of the properties. During the searches, law enforcement found over 1,000 marijuana plants, grow lights, ballasts, exhaust fans, firearms, and plants that had been processed and packaged. The task force also discovered cell phones from the properties that contained text messages between T.M. Le, Tran, Lu, Dang, and D. Le about maintaining the grow operation.

Lu was charged as a principle or accomplice in the unlawful manufacture of a controlled substance and for the unlawful possession of a controlled substance with intent to deliver. The State also alleged that Lu committed the offenses while armed with a firearm and within 1,000 feet of a school bus route stop.

II.    TRIAL

T.M. Le, Tran, Lu, Dang, and D. Le were all tried together. At trial, Lu proposed a jury instruction involving a "race-switching" exercise for the jury "to address issues of unconscious bias." 10 Rep. of Proc. (RP) at 3341. Lu's counsel stated:

> If the record is not already clear, all of the defendants are Vietnamese. It appears to me that most of the jurors are of the majority culture. I don't know what stereotypes people might have of the Vietnamese.
> I could tell the Court that if we were in a jurisdiction where most of the jurors were black, I would still ask for this instruction, because what we have appears to be issues—cross-racial culture, which I believe needs to be addressed.

10 RP at 3341.

2

Lu's proposed instruction read as follows:

> It is natural for human beings to make assumptions about the parties and witnesses in any case based on stereotypes. "Stereotypes" constitute well-learned sets of associations or expectations connecting particular behaviors or traits with members of a particular social group. Often, we may rely on stereotypes without even being aware that we are doing so. As a juror, you must not make assumptions about the parties and witnesses based on their membership in a particular racial group. You must not assume that a particular interpretation of person's behavior is more or less likely because the individual belongs to any particular racial group. Reliance on stereotypes in deciding real cases is prohibited both because every accused is entitled to equal protection of law, and because racial stereotypes are historically, and notoriously, inaccurate when applied to any particular member of a race.
>
> To ensure that you have not made any unfair assessments based on racial stereotypes, you should apply a race-switching exercise to test whether stereotypes have affected your evaluation of the case. "Race-switching" involves imagining the same events, the same circumstances, the same *characters*, but switching the races of the parties and witnesses. For example, if the accused is African-American and the accuser is White, you should imagine a White accused and an African-American accuser.
>
> If your evaluation of the case is different after engaging in race-switching, this suggests a subconscious reliance on stereotypes. You must then re-evaluate the case from a neutral, unbiased *perspective*.

Clerk's Papers (CP) at 195.

The court stated it shared the concern expressed in the proposed instruction and appreciated the "race[-]switching" exercise. 10 RP at 3349. However, the court expressed that it was reluctant to give the proposed instruction due to a lack of authority supporting it. The court stated that language included in the court's other instructions was sufficient to address concerns of bias and prejudice and that using the proposed instruction would be duplicative.

Ultimately the court instructed the jury in part:

> As jurors, you are officers of this court. You must not let your emotions overcome your rational thought process. You must reach your decision based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference. To assure that all parties receive a fair trial, you must act impartially with an earnest desire to reach a proper verdict.

CP at 266.

3

The court also instructed the jury:

> You are all officers of the court and must evaluate the evidence with an open mind free of bias or prejudice. If during your deliberations, you become concerned that the discussions are being influenced by preconceived bias or prejudice, you must bring this to the attention of the other jurors so that the issue may be fairly discussed among all members of the jury.

CP at 315.

The court stated that while this instruction may not be the only way of addressing such concerns, "[the court] believe[s] that our jury[,] with that instruction[,] does have a method of checking itself." 10 RP at 3351.

In closing, Lu's counsel argued that there was bias present in the State's investigation and charging of the case. Counsel also reminded the jury of its obligation to avoid relying on biases stating:

> And that is an oath that you took, an oath to be fair, to be impartial, to be the sole judges of the credibility of each witness, the sole judges of the value or weight to be given to the testimony of each witness, and that, in assessing credibility, you'll avoid bias, conscious or unconscious, including bias based on religion, ethnicity, race, sexual orientation, gender, or disability.
> This oath you take, I'm going to suggest to you, is the most serious oath an American citizen can take outside of serving in the military.

11 RP at 3594-95.

The jury found Lu guilty of unlawful manufacture of a controlled substance and unlawful possession of a controlled substance with intent to deliver. The jury found that Lu committed the offenses within 1,000 feet of a school bus stop route. Lu qualified for a first-time offender waiver and was sentenced to 90 days in jail with six months of community custody.

Lu appeals.

4

ANALYSIS

I.    PROPOSED JURY INSTRUCTION

Lu argues the trial court erred by refusing to give his proposed jury instruction regarding implicit bias.  We disagree.

A.    Standard of Review

The standard of review applied to a trial court's refusal to give a jury instruction depends on whether the court refused the instruction based on a matter of law or fact.  *State v. Walker*, 136 Wn.2d 767, 771, 966 P.2d 883 (1998).  "A trial court's refusal to give instructions . . . based on a factual dispute, is reviewable only for abuse of discretion."  *Id.* at 771-72.  "The trial court's refusal to give an instruction based upon a ruling of law is reviewed de novo."  *Id.* at 772.

Here, because the trial court refused to give Lu's racial stereotyping instruction based on a lack of legal precedent as well as its duplicative nature, we review the court's decision de novo.

B.    Legal Principles

"Racial [and ethnic] bias is pervasive in our society."  *State v. Butler*, 200 Wn.2d 695, 711, 521 P.3d 931 (2022).  "To permit racial or ethnic prejudice to invade the jury system, at any stage of a criminal proceeding, is to damage 'both the fact and the perception' of the jury's role as 'a vital check against the wrongful exercise of power by the State.'"  *State v. Zamora*, 199 Wn.2d 698, 711, 512 P.3d 512 (2022) (internal quotation marks omitted) (quoting *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 223, 137 S. Ct. 855, 197 L. Ed. 2d 107 (2017)).

"Jury instructions are sufficient if substantial evidence supports them, they allow the parties to argue their theories of the case, and, when read as a whole, they properly inform the jury of the applicable law."  *State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253 (2011).  There is, however, no error when a trial court refuses to give a specific instruction "when a more general

5

instruction adequately explains the law and allows each party to argue its case theory." *Id.* Further, "[t]he court need not give a party's proposed instruction if it is repetitious or collateral to instructions already given." *State v. Brown*, 132 Wn.2d 529, 605, 940 P.2d 546 (1997).

C.    Application

Here, the trial court did not err in refusing to give Lu's proposed instruction on implicit bias. The court expressed concern over the lack of authority supporting the proposed instruction as well as the fact that it was duplicative of language included in other instructions. The court, however, did instruct the jury on implicit bias. One instruction stated:

> You are all officers of the court and must evaluate the evidence with an open mind free of bias or prejudice. If during your deliberations, you become concerned that the discussions are being influenced by preconceived bias or prejudice, you must bring this to the attention of the other jurors so that the issue may be fairly discussed among all members of the jury.

CP at 315.

> The court also instructed the jury:

> As jurors, you are officers of this court. You must not let your emotions overcome your rational thought process. You must reach your decision based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference. To assure that all parties receive a fair trial, you must act impartially with an earnest desire to reach a proper verdict.

CP at 266.

Lu's proposed "race-switching" instruction was meant to prevent the jury from relying on biases to reach its verdict. However, because the instructions the court gave already cautioned jurors against relying on bias and prejudice, Lu's proposed instruction was cumulative.

Lu was still able to draw attention to alleged implicit biases in the State's case as well as point out the jury's role in avoiding biases. In closing, his counsel stated:

> And that is an oath that you took, an oath to be fair, to be impartial, to be the sole judges of the credibility of each witness, the sole judges of the value or weight to be given to the testimony of each witness, and that, in assessing credibility, you'll avoid bias, conscious or unconscious, including bias based on religion, ethnicity, race, sexual orientation, gender, or disability.
> This oath you take, I'm going to suggest to you, is the most serious oath an American citizen can take outside of serving in the military.

11 RP at 3594-95.

Further, Lu fails to explain how the court's more general instruction on avoiding bias was inadequate. Lu provides no authority supporting the proposition that a trial court is required to give a proposed instruction on a "race switching" exercise as the only way to guard against implicit biases.

Lu's reliance on *State v. Berhe* is misplaced. 193 Wn.2d 647, 444 P.3d 1172 (2019). *Berhe* involved racial bias and misconduct among jury members who allegedly harassed a fellow juror who was African American into convicting the defendant who was also African American. *Id*. at 654-55. The trial court declined to hold an evidentiary hearing and denied Berhe's motion for a new trial despite his claim that racial bias played a role in the verdict. *Id.* at 653, 656. On appeal, the Washington Supreme Court stated that "identifying the influence of racial bias generally, and implicit racial bias specifically, presents unique challenges. Courts must account for all of these considerations when confronted with allegations that explicit or implicit racial bias was a factor in the jury's verdict." *Id.* at 657. Here, however, Lu has presented no allegations of misconduct or biases that influenced the jury's verdict. While Lu did argue at trial that there was implicit bias in the State's investigation and charging, Lu presents no specific argument on appeal for how the jury's verdict was tainted by racial bias other than to say that the court's instructions "did not

adequately equip the jury to avoid a decision based on unconscious racial stereotypes." Br. of Appellant at 15. Without more, *Berhe* does not help Lu's argument that error occurred here. As such, the trial court did not err in refusing to give the proposed instruction.[1]

CONCLUSION

We affirm Lu's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Maxa, J.

_____
Lee, J.

---

[1] We do not suggest that Lu's proposed instruction was inaccurate or unhelpful in checking unconscious bias; we are merely stating that there was no error in the trial court's refusal to give it.