IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Personal Restraint Petition of: | ) | No. 34866-1-III |
| | ) | |
| CASEY DULLEA PEPPIN, | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

LAWRENCE-BERREY, C.J. — Casey Dullea Peppin seeks relief from personal restraint imposed in his 2013 bench trial convictions of three counts of first degree possession of depictions of minors engaged in sexually explicit conduct. We affirmed Mr. Peppin's judgment and sentence in *State v. Peppin*, 186 Wn. App. 901, 347 P.3d 906 (2015).

In this timely personal restraint petition (PRP), he contends (1) he received ineffective assistance of counsel, (2) the Department of Corrections (DOC) illegally denied him a housing voucher and earned early release because he has a disability, (3) the trial court used an erroneous offender score to determine the standard range for his sentence, and (4) many of his conditions of community custody are not crime related, are unconstitutionally vague, or are subject to arbitrary enforcement. We agree that some of

his community custody conditions are unconstitutional and grant his petition to that

extent.

FACTS

The background facts were set forth in Mr. Peppin's direct appeal, *State v. Peppin*,

186 Wn. App. 901.  We summarize the facts and procedure to the extent necessary to

address the issues Mr. Peppin raises in this PRP.

*Summary of facts and trial*

On December 29, 2011, Detective Brian Cestnik conducted an online investigation

of the Gnutella network to identify persons possessing and sharing child pornography.

Detective Cestnik used special software called Round Up version 1.5.3.  This special

software has capabilities not typically available to the public: it can restrict searches to a

certain geographical area, it can identify the target computer's Internet protocol (IP)

address, and it can identify files by their hash values, which act as unique fingerprints.

During his search, Detective Cestnik identified a computer in the Spokane area

sharing files known by their hash value to be child pornography.  Detective Cestnik

downloaded three of those files from the shared folder of that computer and began

downloading a fourth before the connection failed.  Detective Cestnik further investigated

2

and determined that the fully downloaded files were indeed child pornography, and the computer and IP address belonged to Mr. Peppin.

Detective Cestnik applied for a search warrant and in his accompanying affidavit, he described peer-to-peer file sharing, his search, and his full knowledge of the additional capabilities of Round Up described above. A search warrant issued, and law enforcement executed a search of Mr. Peppin's home on January 11, 2012.

Mr. Peppin was present during the search. He admitted that he had child pornography on his computer and explained that he tried to keep the files out of his shared folder by moving them to another folder on his desktop.

Later, law enforcement created a mirror image of Mr. Peppin's hard drive and confirmed that the three files originally found and downloaded by Detective Cestnik existed in the shared folder. In addition, law enforcement found over 100 new images of child pornography in the other folder on his desktop.

The State charged Mr. Peppin by amended information with three counts of first degree possession of depictions of minors engaged in sexually explicit conduct, and one count of first degree dealing in depictions of minors engaged in sexually explicit conduct.

Mr. Peppin's computer expert testified that the default settings of the program were confusing and the default settings allowed sharing for public browsing. Mr. Peppin

argued he did not knowingly share any files, and that he should not be convicted on the

more serious charge of dealing in depictions of minors engaged in sexually explicit

conduct.  The trial court agreed and acquitted him of that charge.  The trial court found

Mr. Peppin guilty on the three less serious charges of possession of depictions of minors

engaged in sexually explicit conduct.

*Custody and DOC policy regarding release and housing vouchers*

DOC policy is that an offender not in compliance with the facility rules or the

offender's facility plan is ineligible for housing vouchers.  DOC policy also requires an

offender sentenced to community custody to identify an appropriate residence for his or

her community custody plan.  DOC's role is to provide information and resources to

facilitate the offender's timely identification of appropriate resources in the community.

Several months before Mr. Peppin's early release date, DOC advised Mr. Peppin

of the importance of transition programming.  DOC instructed him to contact his assigned

counselor with release address information.  On September 30, 2015, Mr. Peppin sent a

message to DOC stating that he had no resources and would need a housing voucher for

release.

On May 15, 2016, Mr. Peppin sent a message to the DOC asking why he had been

denied a housing voucher.  The DOC responded that his custody facility plan requires that

4

he complete "Achieving Your Potential" (AYP) in order to explore the housing voucher program. The DOC's headquarters requested that Mr. Peppin be given the opportunity to attend an AYP course. When officers went to retrieve him for the course, Mr. Peppin refused to come out and told the officer he would not attend. He received an infraction for failure to participate in required programming. Mr. Peppin explicitly stated that he would not complete AYP. As of February 27, 2017, Mr. Peppin had not completed either AYP or a release plan.

*PRP materials*

As part of Mr. Peppin's petition, he included a letter from his trial counsel. The letter states in part: "As I recall our conversations, you mentioned you usually kept your [upload] settings on zero." Motion to Amend Pers. Restraint Pet., Letter Attach. dated May 31, 2017. Trial counsel also confirmed that he did not request a mirror image copy of Mr. Peppin's hard drive or a copy of the source code for the software used by Detective Cestnik.

Regardless of Mr. Peppin's challenges obtaining early release and housing assistance, he now has been released and is in community custody.

5

ANALYSIS

A.    STANDARD OF REVIEW

"Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before [the] court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). Relief will only be granted in a PRP if there is constitutional error that caused actual and substantial prejudice or if a nonconstitutional error resulted in a fundamental defect constituting a complete miscarriage of justice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005). It is the petitioner's burden to establish this "threshold requirement." *Id.* To do so, a petition must present competent evidence in support of its claims. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992). If the facts alleged would potentially entitle the petitioner to relief, a reference hearing may be ordered to resolve the factual allegations. *Id.* at 886-87.

> As for the evidentiary prerequisite, we view it as enabling courts to avoid the time and expense of a reference hearing when the petition, though facially adequate, has no apparent basis in provable fact. In other words, the purpose of a reference hearing is to resolve genuine factual disputes, not to determine whether the petition actually has evidence to support his allegations. Thus, a mere statement of evidence that the petitioner *believes* will prove his factual allegations is not sufficient. If the petitioner's allegations are based on matters outside the existing record, the petition must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief. If the petitioner's evidence is based on

6

> knowledge in the possession of others, he may not simply state what he thinks those others would say, but must present their affidavits or other corroborative evidence. The affidavits, in turn, must contain matters to which the affiants may competently testify. In short, the petitioner must present evidence showing that his factual allegations are based on more than speculation, conjecture, or inadmissible hearsay.

*Id*. at 886.

A petitioner may not rely on conclusory allegations, but must show with a preponderance of competent, admissible evidence that the error caused him prejudice. *In re Pers. Restraint of Ruiz-Sanabria*, 184 Wn.2d 632, 636, 362 P.3d 758 (2015); *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). This court can disregard a defendant's self-serving assertions included in a PRP. *See In re Pers. Restraint of Yates*, 180 Wn.2d 33, 43, 321 P.3d 1195 (2014) (Stephens, J., concurring) ("[W]e need not accept at face value Yates's self-serving statement, made years after the fact . . . .").

B.      INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Mr. Peppin contends that his trial counsel was ineffective for failing to investigate his claim that his upload slots were set to zero so that downloaded files in his file sharing folder could not be viewed by the public. He further contends that he did not have any files in his shared folder and that Detective Cestnik's software must have been able to unlawfully peer into his private folder.

Related to these arguments, he contends his trial counsel was ineffective for failing to request a mirror image copy of his computer hard drive and for failing to request the source code for the software program used by Detective Cestnik. He contends these items would have enabled him to establish the unlawfulness of the police search.

A defendant has a constitutional right to effective assistance of counsel. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). A convicted defendant seeking relief from personal restraint on a claim of ineffective assistance of counsel is not required to show actual and substantial prejudice if the defendant has not had a prior opportunity to appeal the issue to a disinterested judge; instead, he need only show that he is unlawfully restrained, and establish the elements of his ineffective assistance of counsel claim. *State v. Sandoval*, 171 Wn.2d 163, 168, 249 P.3d 1015 (2011); *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 214, 227 P.3d 285 (2010).

To prevail on a claim of ineffective assistance, Mr. Peppin must show that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance actually prejudiced him. *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012). This court strongly presumes that defense counsel's trial decisions constituted sound strategy. *Elmore*, 162 Wn.2d at 252.

8

### 1. Failure to investigate claim that upload slots were set to zero

The failure to investigate, if prejudicial, can amount to ineffective assistance of counsel. *State v. A.N.J.*, 168 Wn.2d 91, 110, 225 P.3d 956 (2010). A petitioner claiming failure to investigate must show a reasonable likelihood that the investigation would have produced new information useful to the defense. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004). In evaluating prejudice, this court considers the strength of the State's case. *Id.*

In order to succeed on a claim of ineffective assistance of counsel, Mr. Peppin must demonstrate that the result of the proceedings would have been different absent the claimed ineffective assistance. In this case, Mr. Peppin must demonstrate the trial court would have invalidated the search warrants obtained by Detective Cestnik and the fruits of those searches. The record is insufficient for him to make that showing.

Once issued, a search warrant is entitled to a presumption of validity, and the court will give great deference to the magistrate's determination of probable cause and resolve any doubts in favor of the warrant. *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). A search warrant may be invalidated and the fruits of a search may be suppressed if there were intentional or reckless omissions or misstatements of material information in the warrant affidavit. *State v. Atchley*, 142 Wn. App. 147, 157-58, 173

9

P.3d 323 (2007). Negligent omissions or misstatements are insufficient to invalidate a warrant. *Chenoweth*, 160 Wn.2d at 462.

Detective Cestnik meticulously detailed both the general and law enforcement software in his affidavit in support of the search warrant. He explained that normal software could reach files in the shared folder and only downloaded files in the shared folder. He later explained at trial that even under the standard program anyone could view the shared folder:

> The only thing that someone can go in and look at is what's called your "shared file." In other words, you have a file on your computer labeled "shared file" where videos or music or whatever are put into the shared file. If you're logged on and the program is turned on, then anyone can then go in and look in your shared file.

Report of Proceedings (RP) (June 26, 2013) at 17. Detective Cestnik's testimony explains that anyone can view the contents of a shared folder. He noted that a minority of users disable the sharing feature. Users do this by changing their upload settings to zero slots.

Detective Cestnik's affidavit stated his special program could only access the shared folder. He explained the special features consisted of the ability to automatically track or screenshot shared folders and limit searches to geographical areas such as Spokane. The special program also could flag files that shared a hash value. Mr.

10

Peppin's computer expert described the hash value as a "fingerprint." RP (June 13, 2013) at 10. The affidavit in support of the search warrant notes Mr. Peppin's computer was using the default setting that allowed any other software user to browse the contents of his shared folder. This browsing alerted the special program that files with matching hash values to known child pornography values were in Mr. Peppin's shared folder. Once alerted, Detective Cestnik downloaded three files from Mr. Peppin's shared folder, but something interrupted the fourth download. At trial, he confirmed these statements. This evidence is inconsistent with Mr. Peppin's PRP argument that no files were in his shared folder and that he had changed his upload settings to zero slots.

The record further contradicts Mr. Peppin's claim that he changed his upload settings to zero slots. Mr. Peppin did not tell Detective Cestnik that his shared folder could not be accessed. Rather, he implied that it could be accessed when he told the detective that he "attempted to keep files out of his shared folder." RP (June 26, 2013) at 63. Mr. Peppin explained to the detective that he "removed" files from his shared folder and put them into another folder on his desktop. RP (June 26, 2013) at 63.

Mr. Peppin also is judicially estopped from arguing that he changed his settings so that the files in his shared folder could not be shared with others. Judicial estoppel bars a litigant from prevailing on an argument and then later attempting to prevail on a contrary

11

argument. *Miller v. Campbell*, 164 Wn.2d 529, 539, 192 P.3d 352 (2008). Mr. Peppin's computer expert testified that the default settings of Mr. Peppin's program were confusing and that the default settings allowed sharing. This testimony permitted Mr. Peppin to argue, and the trial court to find, that Mr. Peppin did not knowingly have the settings on share. This finding caused the trial court to dismiss the most serious charge against Mr. Peppin.

Contrary to this argument, Mr. Peppin now argues that he understood the default settings and changed them so that no one could view his shared folder. So not only is his argument contrary to the record, it contradicts his earlier argument that resulted in the most serious charge being dismissed. Mr. Peppin cannot have it both ways.

In light of the entirety of the record, Detective Cestnik made good faith, accurate claims in his affidavit in support of the search warrant. Mr. Peppin cannot show that Detective Cestnik made intentional or reckless statements in his request for a search warrant. In fact, the trial record contradicts his new claims.

> 2. *Failure to obtain mirror image of hard drive and the source code*

Mr. Peppin argues that trial counsel was ineffective for not obtaining a mirror image of his hard drive and the source code for law enforcement's software. Mr. Peppin relies on *State v. Boyd*, 160 Wn.2d 424, 158 P.3d 54 (2007). In *Boyd*, the State charged

the defendant with 28 crimes related to five victims, allegedly depicted in hundreds of images. *Id*. at 429. The State also claimed to have tens of thousands of commercial images of unidentified minors on a hard drive engaged in sexually explicit conduct recovered from devices allegedly owned by the defendant. *Id*. The defendant moved to compel the State to give him a mirror image copy of his hard drive to enable independent testing by an expert. *Id*. at 430. The court denied the motion, reasoning the defendant needed only reasonable access rather than a mirror image copy. *Id*.

Our Supreme Court reversed and held that CrR 4.7(a) controlled the issue and required the State to comply. *Id*. at 433-35. The court also noted, "[w]here the nature of the case is such that copies are necessary in order that defense counsel can fulfill this critical role, CrR 4.7(a) obliges the prosecutor to provide copies of the evidence as a necessary consequence of the right to effective representation and a fair trial." *Id*. at 435; *see also State v. Grenning*, 169 Wn.2d 47, 234 P.3d 169 (2010).

*Boyd* is distinguishable. There, the mirror image copy was necessary so that defense counsel could provide effective representation. Here, as explained above, it is speculative whether the mirror image of the hard drive or the source code for the police software would assist Mr. Peppin. Had the mirror image shown that Mr. Peppin had

13

changed the settings, it would have undercut his successful argument that the program

was confusing and that he did not knowingly share files.

C.    DENIAL OF HOUSING VOUCHER

Mr. Peppin next contends the DOC unlawfully denied him a housing voucher to

assist with his postconfinement housing needs, and this is his only avenue for relief.[1]  The

DOC responds that Mr. Peppin is not complying with DOC policy.  We decline to review

this issue because it is moot.

"A case is moot if a court can no longer provide effective relief."  *In re Det. of*

*Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983).  The DOC's housing voucher

program has certain eligibility requirements.  One requirement is that the offender "[w]ill

remain incarcerated past the [early release date] without assistance."  Resp. of DOC, Ex.

3, Attach. E, at 1 (DOC Policy 350.210).  Mr. Peppin's claim is moot because he no

longer is incarcerated.

---

[1] He additionally alleges that DOC has repeatedly violated his civil rights, illegally discriminated against him due to his disability, and in general treated him maliciously. We agree with DOC that these claims, if meritorious, should be pursued in a civil action.

D.    OFFENDER SCORE CALCULATION

Mr. Peppin claims his offender score was incorrectly calculated because the trial

courts findings of fact and conclusions of law are not sufficient to establish that each

video had a separate victim.  We disagree with this claim.

A PRP may not relitigate an issue that was raised and rejected on direct appeal

unless relitigation is required in the interests of justice.  *In re Pers. Restraint of Yates*, 177

Wn.2d 1, 17, 296 P.3d 872 (2013).  "[R]eexamination of an issue decided in a prior

appeal is limited to cases where an intervening change in the law or some other

circumstance justified the failure to raise a crucial argument on appeal."  *In re Pers.*

*Restraint of Mines*, 190 Wn. App. 554, 570, 364 P.3d 121 (2015).

Mr. Peppin already made this challenge on direct appeal in his statement of

additional grounds for review.  This court held the trial court's undisputed findings of fact

found each of the three videos contained a different victim.  Mr. Peppin does not explain

how the interests of justice require relitigation of this issue.

E.    COMMUNITY CUSTODY CONDITIONS

Mr. Peppin challenges nearly all of the mandatory and discretionary community

custody conditions imposed as part of his judgment and sentence.  He claims they are

variously vague, overbroad, or not crime related. We agree that some of his community custody conditions should be struck.

We review community custody conditions for an abuse of discretion. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). The abuse of discretion standard applies whether this court is reviewing a crime-related community custody condition or reviewing a community custody condition for vagueness. *See id*. at 652, 656; *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010); *State v. Cordero*, 170 Wn. App. 351, 373, 284 P.3d 773 (2012). Imposing an unconstitutional condition is always an abuse of discretion. *Irwin*, 191 Wn. App. at 652.

The guarantee of due process contained in the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution requires that laws not be vague. *State v. Magana*, 197 Wn. App. 189, 200, 389 P.3d 654 (2016). Because a violation of a community custody condition can subject a person to arrest and incarceration, vagueness prohibitions extend to community custody conditions. *See Sanchez Valencia*, 169 Wn.2d at 791-92. A community custody condition is not unconstitutionally vague so long as it (1) provides ordinary people with fair warning of the proscribed conduct, and (2) has standards that are definite enough to "'protect against arbitrary enforcement.'" *Magana*, 197 Wn. App. at 200-01 (internal quotation marks

16

omitted) (quoting *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008)). "Unless a statute or rule defines its terms, the words have their ordinary meaning." *State v. Autrey*, 136 Wn. App. 460, 468, 150 P.3d 580 (2006).

The Sentencing Reform Act of 1981, chapter 9.94A RCW, empowers trial courts to impose "crime-related prohibitions" during the period of community custody. Former RCW 9.94A.505(8) (2010). "Crime-related prohibition" means an order directly related to "the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "The philosophy underlying the 'crime-related' provision is that '[p]ersons may be punished for their crimes and they may be prohibited from doing things which are directly related to their crimes, but they may not be coerced into doing things which are believed will rehabilitate them.'" *State v. Riley*, 121 Wn.2d 22, 36-37, 846 P.2d 1365 (1993) (alteration in original). However, "a court is generally permitted to impose crime-related prohibitions on a convicted sex offender's period of community custody to protect the public and offer the offender an opportunity for self-improvement." *Autrey*, 136 Wn. App. at 468.

Mr. Peppin makes 19 separate claims challenging most of his community custody conditions. In large part, these challenges are pedantic complaints that words or phrases are unconstitutionally vague or allow for arbitrary enforcement. For the reasons noted in

17

the State's responsive and reply memoranda, all challenges with the exception of those noted below fail.

### 1.    *Condition 12*

Condition 12 reads: "That you enter into and successfully complete sexual deviancy therapy and mental health treatment with state certified therapists." Resp. of DOC, Ex. 1, Attach. A, App. H (appendix to judgment and sentence) at 2. Mr. Peppin notes that the trial court did not make the required finding to order mental health treatment under RCW 71.24.025. The State concedes this issue and asks that we remand for the trial court to make the required findings or to strike the condition.

If the trial court does not make the required findings, condition 13 will need to be struck and condition 19 will need to be modified. Condition 13 requires compliance with medication management and directives of the therapist. Condition 19 requires approval from the community corrections officer and the therapist for contact with minor children.

### 2.    *Condition 17*

Condition 17 requires Mr. Peppin to not "possess any form of Pornography or sexually explicit material." Resp. of DOC, Ex. 1, Attach. A, App. H at 2. He challenges this condition for vagueness. The parties agree that a prohibition on possessing pornography is unconstitutional but disagree about whether the term "sexually explicit

material" clarifies pornography. The State argues that RCW 9.68.130(2) contains the definition of "sexually explicit material." It does. But condition 17 does not refer to RCW 9.68.130(2).

The parties did not have the benefit of *State v. Padilla*, ___ Wn.2d ___, 416 P.3d 712 (2018). That case makes clear that a vague term cannot be rescued if it relies on a vague definition. *Id*. at 719. In *Padilla*, the community custody condition defined "pornographic material" as "'images of sexual intercourse, simulated or real, masturbation, or the display of intimate body parts.'" *Id*. at 715. *Padilla* reasoned that the definition of "pornographic material" was overly broad because it included art not produced for the purpose of sexual gratification, such as scenes from the film *Titanic* or the television show *Game of Thrones*. *Id*. at 717.

Here, the term "sexually explicit material" is defined as:

any pictorial material displaying direct physical stimulation of unclothed genitals, masturbation, sodomy (i.e. bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals: PROVIDED HOWEVER, That works of art or of anthropological significance shall not be deemed to be within the foregoing definition.

RCW 9.68.130(2).

We believe that the statute's narrower and more precise definition removes the problems noted in *Padilla*.

19

Nevertheless, the term "pornography" is not defined or narrowed. We, therefore, remand with directions that the trial court strike "form of Pornography or" from condition 17 and add after the phrase "sexually explicit material," "as defined by RCW 9.68.130(2)." Explicit reference to the statute removes enforcement issues.

In summary, we generally deny Mr. Peppin's petition. But we remand for the trial court to consider whether to enter the required findings for condition 12 and to amend condition 17 as directed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

WE CONCUR:

_Korsmo, J._
Korsmo, J.

_Pennell, J._ (Result only)
Pennell, J.